# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00016-CR

**The State of Texas, Appellant**

**v.**

**Tri Minh Tran, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 3 OF TRAVIS COUNTY, NO. C-1-CR-11-215115, HONORABLE JOHN LIPSCOMBE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Tri Minh Tran was arrested for driving while intoxicated. *See* Tex. Penal Code § 49.04 (prohibiting "operating a motor vehicle in a public place" if individual is intoxicated). After his arrest, a blood-alcohol-concentration test was performed on a sample collected from Tran, and the test revealed that he had a blood alcohol level of 0.241, which is over 3 times the legal limit. *See id.* § 49.01(2) (providing that person is intoxicated if his blood-alcohol concentration is 0.08 or more). Subsequently, Tran filed a motion to suppress contending that his arrest was illegal and asking the trial court to suppress evidence, including his blood-alcohol test, obtained as a result of the traffic stop and his arrest. In response, the trial court convened a hearing regarding the motion. At the conclusion of the hearing, the trial court granted the motion. When making its ruling, the trial court issued various findings explaining that its decision was based on the testimony of the arresting officers as well as the videos from their dashboard cameras, which the trial court

determined showed that Tran "spoke very little English and that the majority of what the officer" performing the field-sobriety tests "said to [Tran] was . . . misunderstood," that Tran did not understand the instructions for the various field sobriety tests, that Tran was guessing what the officer wanted or simply mimicking him, and that Tran's "inappropriate responses to the questions of the officer as well as mistakes made on the [sobriety tests] were due to a failure to understand the English language and not related to intoxication." The State appeals the trial court's ruling. *See* Tex. Code Crim. Proc. art. 44.01(a)(5) (authorizing State to appeal order granting motion to suppress evidence). We will reverse the trial court's order.

## STANDARD OF REVIEW

Appellate courts review a trial court's ruling on a motion to suppress for an abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *see also Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009) (noting that trial court abuses its discretion if its decision lies outside zone of reasonable disagreement); *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005) (explaining that trial court abuses its discretion when its ruling is unreasonable or arbitrary). During the suppression hearing, the trial court is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). When reviewing a trial court's ruling on a motion to suppress, appellate courts apply a bifurcated standard of review. *Wilson v. State*, 311 S.W.3d 452, 457-58 (Tex. Crim. App. 2010). Under that standard, reviewing courts defer to the trial court's determinations regarding historical facts "if supported by the record," *Wade v. State*, 422 S.W.3d 661, 666 (Tex. Crim. App. 2013), but review de novo the court's application of the law to those

2

facts, *Wilson*, 311 S.W.3d at 458. Similarly, appellate courts give almost total deference to rulings on mixed questions of law and fact if the resolution of those questions depends on an evaluation of credibility and demeanor but review de novo mixed questions of law and fact that are not dependent on an evaluation of credibility and demeanor. *State v. Johnston*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011). Moreover, all purely legal questions are reviewed de novo. *Id.*

**DISCUSSION**

On appeal, the State contends that the trial court erred by granting Tran's motion to suppress because Tran's arrest was proper.[1]

In deciding whether the trial court's ruling should be upheld, we must bear in mind that what we are deciding is whether the warrantless arrest of Tran was supported by probable cause. *See Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). "Probable cause requires an evaluation of probabilities, and probabilities 'are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)); *see also Ornelas v. United States*, 517 U.S. 690, 696 (1996) (explaining that probable cause is "fluid concept"). In circumstances like those present here, probable cause exists "if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense." *Amador*, 275 S.W.3d at 878. "The test for probable

---

[1] In his brief, Tran argues that the State's issue in its brief is multifarious and, therefore, presents nothing for review. We disagree with Tran's characterization of the State's brief.

3

cause is an objective one, unrelated to the subjective beliefs of the arresting officer, and it requires a consideration of the totality of the circumstances facing the arresting officer." *Id.* (internal citations omitted); *see also Wiede*, 214 S.W.3d at 25 (providing that piecemeal consideration of evidence is prohibited). This includes "the training, knowledge, and experience of law enforcement officials." *Wiede*, 214 S.W.3d at 25. Moreover, probable cause does not mean proof that the individual was actually intoxicated in order to justify the arrest. *See Illinois v. Gates*, 462 U.S. 213, 235 (1983) (providing that "[i]t is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause'" (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969))); *see also Brinegar*, 338 U.S. at 175 (explaining that probable cause requires evidence that amounts to "more than bare suspicion" but less than necessary for conviction). For driving-while-intoxicated cases, there is no requirement that certain "intoxication indicators" be present to establish probable cause because the factors may be different in each case. *See State v. Long*, No. 03-11-00725-CR, 2012 Tex. App. LEXIS 4402, at *16 (Tex. App.—Austin May 31, 2012, no pet.) (mem. op., not designated for publication); *see also Woodward v. State*, 668 S.W.2d 337, 345 (Tex. Crim. App. 1982) (explaining that "[i]t must be kept in mind in reviewing a question of sufficiency of probable cause that such a question is a quintessential example of the necessity for case-by-case determination based upon the facts and circumstances shown").

During the suppression hearing, Officer Marcus Davis testified that at approximately 2:00 in the morning, he observed Tran driving a car 26 miles over the speed limit on a highway. Further, Officer Davis related that after observing the speeding car, he activated his emergency lights and attempted to initiate a traffic stop. However, Officer Davis stated that Tran did not pull over

and actually "sped up and [drove] away from" him. Moreover, Officer Davis testified that eventually Tran pulled into a parking lot but that Tran ran over a curb when entering the parking lot. In addition, Officer Davis described how when he approached the car and asked for Tran's driver's license, Tran handed the officer a credit card instead. When describing this interaction, Officer Davis discussed how an intoxicated individual might confuse his credit card for his driver's license.[2] Furthermore, Officer Davis recalled noticing that there was a strong alcohol odor and that Tran's eyes were bloodshot. Next, Officer Davis stated that he asked Tran where he was coming from and whether he understood English and that Tran answered that he understood English, was coming from a downtown bar, and had consumed "one Dos Equis beer." Officer Davis also related that Tran had difficulty putting his car into park and that when he asked Tran to step out of the car, Tran left the car in drive. Finally, Officer Davis explained that based on the totality of his observations, he believed that Tran was intoxicated, that he called for assistance from a driving-while-intoxicated enforcement officer, and that Officer Richard Sanders responded to the call.

During the suppression hearing, a video taken from Officer Davis's dashboard camera was admitted into evidence. That video is consistent with the testimony given by Officer Davis,

---

[2] In his brief, Tran asserts that this Court should conclude that his decision to hand Officer Davis his credit card instead of his driver's license was caused by an inability to understand what was being asked of him. Although the trial court determined that Tran's performance on various sobriety tests was affected by his inability to understand the instructions provided to him, the trial court made no similar finding regarding his failure to present his license. Moreover, as discussed above, Officer Davis explained that handing a police officer a credit card can be a sign of intoxication. In addition, although there may indeed be circumstances in which a language barrier may result in a misunderstanding of sobriety-test instructions, it is not as clear that a linguistic misunderstanding would result in an individual presenting a credit card to a police officer when being pulled over for a traffic violation.

and one of the trial court's findings reflects Officer Davis's testimony.[3] *Compare Carter v. State*, 309 S.W.3d 31, 40 (Tex. Crim. App. 2010) (providing that "a trial court's determination of historical facts based on a videotape recording is still reviewed under a deferential standard"), *with Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000) (explaining that in circumstances in which there is recording of police detention, reviewing courts are not obligated to "give almost total deference to a trial court's determination of the historical facts" because the video "presents indisputable visual evidence").

In light of the testimony and the video detailing that Tran was seen speeding on a highway late at night, sped up when Officer Davis activated his lights, did not quickly attempt to pull over when Officer Davis activated his lights, drove over a curb when pulling into a parking lot, had difficulty putting his car into park, handed Officer Davis his credit card instead of his driver's license, smelled like alcohol, had bloodshot eyes, stated that he was on his way home from a bar, and admitted that he had been drinking, probable cause existed to place Tran under arrest for driving while intoxicated. *See Amador*, 275 S.W.3d at 879 (noting that police officer's observation that defendant was driving "at a high rate of speed, in excess of the posted speed limit" and that defendant "fumbled through his wallet" and "was unusually slow in providing" his driver's license supported existence of probable cause); *Dyar v. State*, 125 S.W.3d 460, 468 (Tex. Crim. App. 2003)

---

[3] Specifically, the trial court found as follows:

> On September 6, 2011, Officer Davis with the Austin Police Department stopped Defendant, Tri Tran, for speeding, 86 miles per hour in a 60 mile per hour zone. When asked for a driver's license, Defendant gave a credit card. Defendant also had trouble putting the vehicle in park. Officer Davis noticed the odor of an alcoholic beverage emitting from defendant's vehicle and after defendant admitted to consuming a Dos Equis, he called for a DWI Unit to assist in his investigation.

(providing that suspect's admission that he drank alcohol before driving is relevant factor in probable-cause determination); *Maxwell v. State*, 253 S.W.3d 309, 314 (Tex. App.—Fort Worth 2008, pet. ref'd) (determining that probable cause was present when, among other things, defendant was speeding at 2:00 a.m. and admitted to police officers that he had been drinking); *Learning v. State*, 227 S.W.3d 245, 249 (Tex. App.—San Antonio 2007, no pet.) (concluding that probable cause existed where officer noticed smell of alcohol, where defendant admitted that he had been drinking, and where defendant veered into adjacent lane); *cf. State v. Garrett*, 22 S.W.3d 650, 654-55 (Tex. App.—Austin 2000, no pet.) (finding probable cause when evidence showed, among other things, that defendant smelled like alcohol, drove erratically, and appeared to be evading officers).

When granting Tran's motion to suppress, the trial court based its ruling and its additional findings on the testimony describing and the video showing events occurring after Officer Sanders arrived on the scene and asked Tran to perform various field-sobriety tests. In particular, the trial court made several findings regarding Tran's performance on the field-sobriety tests and regarding whether Tran understood the instructions that Officer Sanders gave him. Although the trial court correctly noted in its findings that Officers Davis and Sanders discussed the need for calling an interpreter, that Officer Sanders testified that it was not clear whether Tran's poor performance on the sobriety tests was the result of his intoxication or his inability to understand the instructions, and that portions of the dashboard video from Officer Sanders's vehicle showed that Tran was having difficulty understanding the instructions,[4] none of the evidence pertaining to the

---

[4] Those findings provide as follows:

2. Officer Sanders with the Austin Police Department thereafter arrived and proceeded to conduct an investigation for driving while intoxicated. Two videos were made by

7

the dashboard cameras of the officers' respective vehicles. The officers discussed on video that the defendant did not appear to understand the English language and that they would need a Vietnamese interpreter. It appears that one of the officers tried to locate an interpreter and was unable to find one.

3. Officer Sanders thereafter attempted to conduct an investigation for driving while intoxicated. He asked the defendant if he spoke English and the defendant replied, "Yes." However, it is evident from the video that the defendant spoke very little English and that the majority of what the officer said to him was lost upon the defendant and misunderstood. It should be noted that the defendant was cooperative and polite with the officer at all times.

4. Officer Sanders proceeded to ask the defendant a series of questions to which the defendant responded in a manner which indicates he did not understand the officer. The officer then proceeded to conduct Standardized Field Sobriety Tests (SFSTs) with the defendant, which required both verbal instructions and a physical demonstration. The defendant did not understand the instructions for the tests. The defendant was cooperative and attempted to perform the tests, but seemed to be mimicking the officer's demonstration and it was clear in the video that the defendant was guessing as to what the officer wanted him to do.

5. Officer Sanders testified before the court that the defendant's inability to understand the verbal instructions due to a language barrier affected the results of the SFSTs. The Court FINDS that defendant's inappropriate responses to the questions of the officer as well as mistakes made on the SFSTs were due to a failure to understand the English language and not related to intoxication, but to a lack of understanding of the English language.

6. The Court further FINDS that the Standardized Field Sobriety Tests (SFSTs) are standardized tests that require that the officer give both verbal instructions and a physical demonstration in order to standardize the methodology employed at the time they are administered. While prior courts have held that the instructions do not have to be exact, they do have to be relayed to the defendant and the defendant has to be able to understand the verbal instructions prior to performing the tests. For example, part of the standardization is to ask a defendant if they understand the instructions given.

7. In this case, the Court FINDS that defendant was unable to understand the instructions given by the officer as he administered the SFSTs and that lack of understanding was due to a language barrier and not due to intoxication.

8

sobriety tests undermines the establishment of probable cause through other sources. Moreover, although we need not address the matter further, we do note that the video shows some behaviors by Tran that were consistent with intoxication but would not have been the result of a language barrier. For example, the video shows that while performing the sobriety tests, Tran swayed and had a difficult time maintaining his balance. *Texas Dep't of Pub. Safety v. Gilfeather*, 293 S.W.3d 875, 880 (Tex. App.—Fort Worth 2009, no pet.) (explaining that "[b]loodshot eyes, an odor of alcohol on a person's breath, and unsteady balance are all classic symptoms of intoxication").

Given the governing standard of review, given the trial court's finding regarding events occurring prior to Tran performing field-sobriety tests, and in light of the testimony presented and the videos shown during the hearing, we conclude that Tran's arrest was supported by probable cause. Accordingly, we conclude that the trial court abused its discretion by granting Tran's motion to suppress and, therefore, sustain the State's issue on appeal.

---

8. As such, the Court FINDS that the methodology employed by the State's witness, Officer Sanders, as to the administration and interpretation of the field sobriety tests was not reliable in that the tests are standardized with oral instructions that must be given prior to their administration and that such instructions are fundamental to the standardization of the tests and as such must be given in a language that the defendant understands. The State's witness gave said instructions in the English language, knowing that the defendant spoke Vietnamese, and knowing that the defendant spoke very little English based upon his preliminary interview with the defendant. The State's witness acknowledged that there was an issue with the validity of the tests due to the inability of the defendant to understand the oral instructions. As such, the technique was improperly applied by the officer in administering the field sobriety tests and as such the testimony regarding the SFSTs is not relevant to the issue before the Court. The Court FINDS that the results of the SFSTs are invalid, that there was no probable cause for the officer to arrest the defendant for driving while intoxicated and that the arrest, SFSTs, blood alcohol test of Defendant and all other post-arrest evidence is inadmissible and HEREBY suppressed.

9

**CONCLUSION**

Having sustained the State's issue on appeal, we reverse the trial court's order and remand the case for further proceedings.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Rose

Reversed and Remanded

Filed:   August 27, 2014

Do Not Publish

10