# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH


### NO. 2-05-248-CR

KENNETH J. MAXWELL                                                    APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

------------

## FROM COUNTY CRIMINAL COURT NO. 7 OF TARRANT COUNTY

------------

## OPINION

------------

Appellant Kenneth J. Maxwell challenges the jury's verdict finding him guilty of misdemeanor driving while intoxicated.

### Factual Summary

On April 22, 2003, at 2:00 a.m., Officer James Hill stopped appellant for driving eighty miles per hour in a sixty-miles-per-hour zone on the West Freeway in Fort Worth. Officer Hill also noticed that appellant failed to use his turn signal when he changed lanes and that appellant was weaving. Appellant

admitted to Officer Hill that he had been drinking after Officer Hill noticed an odor of alcohol and appellant's bloodshot eyes. Appellant, however, refused to perform any sobriety tests in the field or later at the police department. After arresting him and taking him to the police department, appellant eventually submitted to a breath test approximately one hour later, which indicated he was legally intoxicated at 0.11. He was charged by information under two theories of intoxication: loss of normal use of mental and physical faculties or an alcohol concentration of at least 0.08. The court denied his pretrial motion to suppress the evidence and any statements obtained as a result of his arrest. A jury found him guilty. The trial court sentenced him to 180 days' confinement with a $450 fine. The court suspended his sentence and placed him on twelve months' community supervision.

**Issues on Appeal**

In appellant's first point, he contends the evidence is legally insufficient to prove either of the State's theories of intoxication—loss of normal use of his mental and physical faculties or an alcohol concentration of at least 0.08. In his second point, he challenges the factual sufficiency of the evidence to support the jury's verdict. In his third point, appellant asserts trial court error in overruling his motion to suppress the evidence based upon a lack of probable cause to *arrest* appellant. In his fourth point, he asserts error in overruling the

2

motion to suppress the breath test results because he was not afforded his right to "contact a physician to obtain a specimen of his blood."  In his final point, appellant claims trial court error in overruling his objection to allegedly improper jury argument at the guilt-innocence phase of the trial.  We begin our discussion with appellant's suppression points.

### Suppression Issues

Appellant contends that his arrest was illegal because it was made without probable cause in violation of the Fourth Amendment and the United States Constitution; article I, section 9 of the Texas Constitution; and article 38.23 of the Texas Code of Criminal Procedure.[1]  Appellant contends that the arresting officer's testimony shows that he had made the decision to arrest appellant prior to the time appellant got out of his car because he testified that appellant was "possibly intoxicated above the legal limit." Appellant believes Officer Hill made his decision to arrest him after observing factors only showing that appellant had been drinking, not that he was intoxicated, e.g., red eyes, smell of alcohol, refusal to perform field sobriety tests, speeding, and appellant's admission that he had been drinking.  He also contends, without

---

[1]Appellant does not challenge the validity of the initial traffic stop.

authority, that the refusal to perform field sobriety tests cannot be used as a factor in establishing probable cause to arrest.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App.1999). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor; and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); *State v. Ballman*, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref'd). But when the trial court's rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court's

4

rulings on mixed questions of law and fact. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652-53. Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, as in this case, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *Id.* We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Id.*

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004); *Ross*, 32 S.W.3d at 856; *Romero,* 800 S.W.2d at 543; *Martinez v. State*, 236 S.W.3d 361, 367 (Tex. App.—Fort Worth 2007, pet. dism'd). Further, as noted by the State in its brief, we are to review the trial court's decision by looking at and

5

considering the "totality of the circumstances." *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007).

We should not, as appellant does, look at the facts in existence piecemeal or isolate our review to those facts elicited only on cross-examination by the defense. Looking to the totality of these circumstances, there were other additional facts that Officer Hill could have considered in establishing probable cause: it was 2:00 a.m. and appellant admitted he was coming from a place that the officer knew sold alcohol; appellant admitted he had been drinking as well; appellant was not just speeding but he was speeding while admittedly having at least drunk some alcohol; appellant passed the officer while speeding; appellant was also weaving in his own lane and had failed to use his turn signal when he changed lanes; and appellant refused to perform any field sobriety tests.

Appellant contends that we may not include an appellant's refusal to submit to field sobriety tests in our probable cause review, but he cites no authority for this proposition, and we likewise have been unable to find authority that supports his proposition. The only case we have found directly on point states that we may consider an appellant's refusal to submit to an officer's request for field sobriety tests in our probable cause review. *State v. Garrett,* 22 S.W.3d 650, 655 (Tex. App.—Austin 2000, no pet.). In that case,

the Austin Court of Appeals approved considering the defendant's refusal to participate in field sobriety tests because it was a "direct result of the defendant's conduct, i.e., his refusal to participate in any of these tests." *Id.* The court stated that officers may consider a defendant's refusal as a part of the "totality of the circumstances."[2]  This does not modify an older Fort Worth case that supports the proposition that the refusal to undertake field sobriety tests *alone* is insufficient probable cause. *Jackson v. State,* 681 S.W.2d 910, 912 (Tex. App.—Fort Worth, no pet.).  Here, there are other factors that additionally support the finding of probable cause.  Thus, we conclude and hold that when considering the totality of all the evidence admitted at trial and doing so in the light most favorable to the trial court's ruling, there was sufficient evidence to establish probable cause to arrest appellant.  Thus, we conclude that the trial court correctly denied appellant's motion to suppress. We overrule appellant's third point.

---

[2]We also note that there are cases that support the admission of the refusal to participate in field sobriety tests in the context of the sufficiency of the evidence on intoxication—a different question from its consideration in the probable cause analysis. *See Dawkins v. State*, 822 S.W.2d 668, 671 (Tex. App.—Waco 1991), *pet. ref'd,* 825 S.W.2d 709 (Tex. Crim. App. 1992); *Barraza v. State*, 733 S.W.2d 379, 381 (Tex. App.—Corpus Christi 1987), *aff'd,* 790 S.W.2d 654 (Tex. Crim. App. 1990).

In appellant's other point complaining about the denial of his motion to suppress, he contends that the results of his breath tests were inadmissible because he was not afforded "his right to contact a physician to obtain a specimen of his blood." Appellant contends that transportation code section 724.019(a)–(b) was violated.[3] That section provides that a person arrested for a driving while intoxicated offense should be given a reasonable opportunity to contact a physician or nurse to take an additional specimen of blood once the person has submitted to the taking of a specimen of breath, blood, urine, or other specimen. TEX. TRANSP. CODE ANN. § 724.019(a), (b) (Vernon 1999). In particular, appellant contends that he was not given a reasonable opportunity to contact such a person and that the State showed no "inability" to do so.

According to appellant's testimony, after he had consented to and given a breath specimen, he was taken from his holding cell into a hallway and given an opportunity to get an additional test. He testified that he was then told that there would be a time limit on getting such a test done and that he was free to call a physician, but they never gave him access to a phone. Appellant asked to be taken to a hospital for a test, and he also asked whether the police had

---

[3]Appellant does not contend that his consent to give a breath specimen was coerced or involuntary as he had argued at trial in addition to this complaint. *See Harrison v. State*, 205 S.W.3d 549, 553 (Tex. Crim. App. 2006); *Erdman v. State*, 861 S.W.2d 890, 893 (Tex. Crim. App. 1993).

someone on staff who could give him a blood test. Both requests were denied. So appellant gave them the name of a friend and asked them to call her to see if she could contact someone to give him the test. No one told him if they reached her or the result of the conversation, according to appellant. Officer Hill conceded that appellant wanted a blood test and that he had a right to contact someone to try to get a blood test once he submitted to a breath test. He also admitted on cross-examination that he had only seen one person in custody ever get another specimen, and in that case, the specimen was taken by the person's wife who happened to be a doctor. Officer Hill further acknowledged that the law required the additional test to be done within a two-hour window from arrest and that appellant was given his breath test at about 3:00 a.m., already one hour and two minutes after his arrest. Officer Hill said appellant was allowed to call his wife or girlfriend but that the police department's policy was not to take anyone to another facility for any additional testing.

Section (c) of 724.019 provides that a peace officer is not *required* to transport someone in custody to a facility for testing, and further, section (d) provides that the "*failure* or *inability* to obtain an additional specimen or analysis under this section does not preclude the admission of evidence relating to the analysis of the specimen taken" by the officer originally. TEX. TRANSP. CODE

9

ANN. § 724.019(c), (d) (emphasis supplied). Thus, under this very statute there are two scenarios under which the failure to obtain another specimen has no effect on admissibility of the original breath specimen: neither the "failure" nor the "inability" to obtain the additional blood specimen affects the admissibility of the original breath test. In spite of this, appellant argues for the suppression of the original breath test due to the officers' failure to provide him with a reasonable opportunity to obtain a blood test and the State's failure to prove "inability."

Statutory construction is a question of law for the courts to determine. *Jones v. State*, 175 S.W.3d 927, 930 (Tex. App.—Dallas 2005, no pet.). We begin with the plain and common meaning of the statute. *Bargas v. State*, 164 S.W.3d 763, 772 (Tex. App.—Corpus Christi 2005, no pet.). We are to interpret words and phrases in context and construe them according to the rules of grammar and common usage. TEX. GOV'T CODE ANN. § 311.011 (Vernon 2005). We are to presume that the entire statute is to be effective, and we may consider the object to be attained regardless of whether the statute is determined to be ambiguous or not. *Id.* §§ 311.021, 311.023. If the language is clear, we must interpret it according to its terms. *Bargas,* 164 S.W.3d at 772. Only if the interpretation leads to absurd results will we look to extra-textual factors to determine legislative intent. *Id.*

> When we interpret a statute we seek to effectuate the collective intent or purpose of the legislators who enacted the legislation. . . . [W]e must interpret an unambiguous statute literally, unless doing so would lead to an absurd result that the legislature could not possibly have intended. . . . Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute.

*Seals v. State*, 187 S.W.3d 417, 419–20 (Tex. Crim. App. 2005).

Here, the language is clear: the legislature specifically addressed the ramifications of "failure or inability" to obtain another specimen and it clearly provided that such failure or inability would have no effect on the admissibility of the specimen obtained by the officer. And while we may question the legislature's failure to provide a remedy for non-compliance, we cannot say that the failure to do so is absurd. The legislature obviously wanted to make such opportunity available to such drivers but did not want to risk all prosecutions simply because an additional test was unobtainable for some reason. Because the statute itself states that the inability or failure to obtain another specimen does not affect the admissibility of the original breath specimen, we must follow the dictates of the statute and hold that there was no trial court error in denying appellant's motion to suppress on this basis. We overrule appellant's fourth point and turn to appellant's sufficiency points.

**Sufficiency of the Evidence**

In appellant's first point, he contends the evidence is legally insufficient to support the verdict, and in his second point, he contends the evidence is factually insufficient to support the verdict.

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Under appellant's legal sufficiency challenge, he complains about the lack of evidence to support the jury's finding of a level of alcohol concentration of .08 or greater. In particular, he complains that because the test was "given within an hour of the stop," there is only evidence of his alcohol concentration one hour after the stop as opposed to evidence of his blood alcohol concentration—"BAC"—at the time he was observed driving while allegedly intoxicated. Appellant contends the evidence shows that he could have been below the .08 level because no one testified that he would have been at or above the legal limit an hour earlier. The Texas Court of Criminal Appeals has held that breath tests are probative and admissible even in the absence of

12

retrograde extrapolation testimony. *Stewart v. State*, 129 S.W.3d 93, 97 (Tex. Crim. App. 2004). The lack of extrapolation evidence goes to its weight, not its admissibility. *State v. Mechler*, 153 S.W.3d 435, 449 (Tex. Crim. App. 2005). Thus, the breath test showing a BAC of .11 is some evidence of intoxication.

Furthermore, appellant was charged under two theories of intoxication: loss of normal use and excess BAC. Although somewhat unclear, appellant appears to argue that the jury could not rely on the alternate theory—loss of normal use—because the evidence admitted at trial on this theory was also legally insufficient. The evidence admitted, however, shows that the officer testified that appellant was stopped because he was traveling at about eighty miles per hour at 2:00 a.m. on Fort Worth's West Freeway while drifting two times within his lane and changing lanes once without a proper signal; that appellant passed the officer in his patrol car while traveling approximately twenty miles per hour over the posted speed limit; that Officer Hill noticed an odor of alcohol and bloodshot eyes; that appellant admitted he had been drinking and had come from the Illusions bar where he had been drinking; and appellant refused to perform field sobriety tests. The jury was thus free to believe, based upon the totality of the circumstances, that appellant was intoxicated while driving based upon the absence of the normal use of his

mental or physical faculties. Therefore, the absence of extrapolation evidence as to his blood alcohol level at the time of the stop was irrelevant to the jury's finding of guilt because he was charged under both theories. We overrule appellant's first point.

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414-15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to

overturn [the] conviction." *Id.* We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id.* We may not simply substitute our judgment for the fact-finder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, we must give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9.

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). Moreover, an opinion reversing and remanding on factual insufficiency grounds must detail all the evidence and clearly state why the finding in question is factually insufficient and under which ground. *Goodman v. State*, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001); *Johnson*, 23 S.W.3d at 7.

15

Reviewing the evidence in a neutral light, we cannot say that there was factually insufficient evidence to support the jury's verdict. Here, appellant points particularly to the arresting officer's testimony conceding that appellant behaved normally and walked and talked normally. However, when viewing this evidence, we must also consider the other evidence previously mentioned in our legal sufficiency review, and review all the evidence in a neutral light. And when so reviewing the evidence, including the evidence of appellant's refusal to perform field sobriety tests, we conclude the evidence is also factually sufficient to support the jury's verdict. We overrule appellant's second point.

**Improper Jury Argument**

Finally, we turn to appellant's last point, in which he contends that the trial court erred by overruling his objection to an instance of allegedly improper jury argument during guilt/innocence. In particular, appellant contends that the prosecutor suggested that defense counsel "was acting unethically in trying to distract the jurors from focusing on the evidence against appellant by 'putting everyone else on trial.'" Appellant objected to the following:

> [PROSECUTOR]: Of the fifteen minutes that Defense Counsel got up here and talked to you [during jury argument], ten of those minutes were spent talking about somebody else besides that Defendant, *because that's what he was trying to do, put everybody else on trial.*

16

[DEFENSE COUNSEL]: *Objection, Judge. It's an attempt to strike at the Defendant over Counsel's shoulders.*

[PROSECUTOR]: Put everyone else on trial to distract. [Emphasis added].

Appellant contends this argument "intentionally sought to distract the jurors from the evidence against appellant by putting 'everybody else on trial.'" Appellant also contends this is an attempt to strike at appellant over the shoulders of his counsel and an attempt to divert the jury from performing its role as trier of fact.

To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992), *cert. denied*, 510 U.S. 829 (1993); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973). If a jury argument exceeds the bounds of proper argument, the trial court's erroneous overruling of a defendant's objection is not reversible error unless it affected the appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Martinez v. State*, 17 S.W.3d 677, 692-93 (Tex. Crim. App. 2000); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999). In

17

determining whether the appellant's substantial rights were affected, we consider (1) the severity of the misconduct (i.e., the prejudicial effect of the prosecutor's remarks), (2) curative measures, and (3) the certainty of, conviction absent the misconduct. *Martinez*, 17 S.W.3d at 692-93; *Mosley*, 983 S.W.2d at 259.

> The Court of Criminal Appeals has consistently held that arguments that strike at a defendant over the shoulder of his defense counsel are improper. *Dinkins v. State*, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995). Although the Court has found it impossible to articulate a precise rule regarding these types of arguments, it has cautioned that "a prosecutor runs a risk of improperly striking at a defendant over the shoulder of counsel when the argument is made in terms of defense counsel personally and when the argument explicitly impugns defense counsel's character." *Mosley v. State,* 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). Even if a prosecutor's statements are intended as a rebuttal, the legitimate arguments of defense counsel cannot serve as a basis for permitting prosecutorial comments that "cast aspersion on defense counsel's veracity with the jury."

*Cole v. State*, 194 S.W.3d 538, 544 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (quoting *Dinkins*, 894 S.W.2d at 357).

The State contends the argument was a proper response to defense counsel's arguments that questioned some of the State's witnesses, Officer Hill, Mark Fonderen, and the intoxilyzer operator. We agree. When we look at the argument in the context of all of appellant's arguments and all of the witnesses' testimony, we can see that the remark was an attempt to redirect

18

the jury to the testimony and evidence that was admitted yet not rebutted as opposed to actually "trying to put everyone else on trial." The argument is more in the nature of a colloquialism and an attempt to respond to appellant's closing argument that critiqued a lot of the State's witnesses and case. Thus, we conclude that the prosecutor's argument was a proper response to opposing counsel's arguments. We overrule appellant's fifth point.

### Conclusion

Having overruled all of appellant's points, we affirm the trial court's judgment.

TERRIE LIVINGSTON
JUSTICE


PANEL B:   LIVINGSTON, WALKER, and MCCOY, JJ.

PUBLISH

DELIVERED: March 13, 2008

19