Opinion issued October 27, 2016



In The

# Court of Appeals

For The

## First District of Texas

————————————

NO. 01-15-00652-CR

————————————

**WARREN KIRTLEY WHITE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 10**
**Harris County, Texas**
**Trial Court Case No. 1937165**

---

## MEMORANDUM OPINION

A jury convicted appellant, Warren Kirtley White, of misdemeanor driving while intoxicated ["DWI"]. The trial court assessed punishment at 180 days' confinement and a $1000, which it then suspended, placing appellant under community supervision for one year. In three points of error, appellant contends (1)

the evidence is legally insufficient; and the trial court abused its discretion by (2) admitting hearsay evidence, and (3) denying appellant's motion for new trial. We affirm.

## BACKGROUND

At approximately 9:20 p.m. on December 28, 2013, Sergeant M. Haver of Harris County Precinct 4 was responding to a dispatch to supervise the investigation of a suspected sexual assault of a child when she was flagged down at a red light by two cars of motorists. Haver learned that a white BMW SUV had nearly hit several other vehicles, so she drove in the same direction the BMW had been headed to look for it. Haver soon saw a white BMW veer into another lane of traffic, so she initiated a traffic stop to investigate.

Appellant was driving the white BMW. Haver noticed that he had a strong odor of alcoholic beverage on his breath and slurred speech. Appellant told Haver that he had been on a date that had not ended well. He also told her that he was a diabetic. Haver called for EMS to come check appellant's blood sugar levels, and she also called for assistance from a DWI unit.

EMS arrived and took appellant's blood sugar, which, at 308, was higher than a normal level of 80 to 120. A paramedic advised appellant to go to the hospital, but he declined to do so. The paramedic testified at trial that low blood sugar can cause symptoms that are consistent with intoxication, but symptoms mimicking

2

intoxication are not generally seen with high blood sugar. The paramedic did testify that prolonged high blood sugar could produce such symptoms, in which case one might also see loss of vision and kidney failure. She testified that levels of around 500 were usually needed to cause such symptoms.

The DWI unit, let by Deputy P. Garaci, also arrived on the scene to conduct an investigation. Garaci saw that appellant had bloodshot, watery eyes and a strong odor of alcoholic beverage. Appellant refused to perform any field sobriety tests, and he also refused to give a breath or blood sample, even after being warned of the consequences of such refusal.

Appellant was then arrested, and police obtained a search warrant to draw a blood sample. The blood sample, which was taken three hours and 48 minutes after appellant's arrest, showed that he had a blood alcohol content ["BAC"] of 0.145.

Appellant, testifying in his own behalf, stated that he had been to the Laff Stop Comedy Club with a date, Courtney. While there, he testified that he had two White Russian mixed drinks, while Courtney drank water. He produced a receipt showing the purchase of two drinks. The receipt showed that the tab had been opened at 6:23 p.m. and was closed at 9:30 p.m. Appellant testified that he drove Courtney home, and was returning to his house when he saw flashing red lights behind him.

Appellant, who was 54 years old, testified that he had been diagnosed with Type 1 diabetes at age 19, and that he had grown accustomed to the physical

3

symptoms of high blood sugar and did not always notice them right away. He testified that when his blood sugar is high, he suffers blurry vision, dry mouth, and confusion. He testified that these symptoms often come on gradually without him recognizing that they have begun. There was also evidence that drinking alcohol can cause high blood sugar.

The jury found appellant guilty of DWI, and this appeal followed.

## SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review and Applicable Law

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the jury's verdict to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We give deference to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. However, our duty requires us to "ensure that the evidence presented actually

supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

A person commits the offense of DWI if he "is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE ANN. § 49.04 (West Supp. 2016). The Penal Code defines "intoxicated" as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body[,]" or "having an alcohol concentration of 0.08 or more." *Id*. § 49.01(2) (West 2011). Accordingly, the jury was charged that it could find appellant guilty if he "operat[ed] a motor vehicle in a public place while intoxicated," which the charge defined as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol into the body or having an alcohol concentration of 0.08 or more."

**B. Analysis**

In his first point of error, appellant contends there was insufficient evidence to show that he was intoxicated. Appellant attacks both means of proving intoxication, i.e., his BAC and his loss of use of mental or physical faculties by reason of the introduction of alcohol into his body.

Appellant contends that because his blood test, which showed a BAC of 0.145, was taken three hours and 48 minutes after he was stopped, the State needed

5

retrograde extrapolation evidence to prove his BAC at the time he was driving. He further contends that the State's retrograde extrapolation evidence proved nothing because the State's expert assumed, without anything to support the assumption that appellant was in the "elimination phase" at the time the test occurred.[1] Appellant does not contend that the State's retrograde extrapolation evidence was erroneously admitted, only that it was legally insufficient to prove that his BAC was greater than 0.08. However, the State did not need to prove appellant's BAC; it could prove intoxication under either theory.

In *Stewart v. State*, 129 S.W.3d 93 (Tex. Crim. App. 2004) the court held that retrograde-extrapolation evidence is not necessary for a jury to logically infer that the defendant's BAC was at or above a particular level. In *Stewart*, the defendant was convicted of DWI, which was defined in the jury charge as "having an alcohol concentration of 0.10 or more" or "not having the normal use of mental or physical faculties by reason of the introduction of alcohol . . . into the body." 129 S.W.3d at 95. The defendant was pulled over for traffic violations, had red and glassy eyes, admitted to the police officer that she had been drinking, failed three of seven field

---

[1]     *See Mata v. State*, 46 S.W.3d 902, 909–10 (Tex. Crim. App. 2001) ("[I]f a driver is tested while in the absorption phase, his BAC at the time of the test will be higher than his BAC while driving. If tested while in the elimination phase, his BAC at the time of the test could be lower than while driving, depending on whether he had reached his peak before or after he was stopped. Obviously, the greater the length of time between the driving and the test, the greater the potential variation between the two BACs.")

sobriety tests, and took breath tests that registered 0.160 and 0.154 about 80 minutes after she was stopped. *Id.* at 95. At trial, the court admitted the breath test results, but refused to permit the State's expert to give retrograde extrapolation evidence because the expert "conceded that he did not have enough information to determine what Stewart's alcohol concentration would have been at the time she drove." *Id.*

The San Antonio Court of Appeals reversed the defendant's conviction in *Stewart*, reasoning that the results of the [breath] tests were irrelevant without retrograde extrapolation and constituted no evidence showing that *Stewart* was intoxicated when she drove. *Id.* at 95–96.

The Court of Criminal Appeals held that the court of appeals "erred in determining that breath test results are inadmissible without retrograde extrapolation evidence." *Id.* at 95. The blood tests were relevant because "they provided evidence that she had consumed alcohol." *Id.* at 96.

> Here, the jury had to decide whether Stewart was intoxicated at the time she drove. This meant either the jury could find that Stewart was intoxicated under the per se definition—that her blood alcohol concentration was 0.10 or more—or under the impairment theory— that she did not have the normal use of mental or physical faculties by reason of the introduction of alcohol into her body. *The breath test results were pieces in the evidentiary puzzle for the jury to consider in determining whether Stewart was intoxicated at the time she drove.* The jury had other evidence to decide that issue, such as the arresting officer's testimony about Stewart's driving patterns before he pulled her over, the results of Stewart's field sobriety tests, Stewart's admission to the officer that she had a couple of beers at the concert, Stewart's statement that she "couldn't do [the field sobriety tests] sober," the officer's videotape recording of these events, and the fact

that the breath tests were conducted an hour and twenty minutes after Stewart's traffic stop.

*Id.* at 97 (emphasis added).

Even if the retrograde extrapolation testimony did not prove appellant's BAC at the time he was driving, it is of no matter. The jury did not need to establish defendant's exact BAC at the time he drove. *Id.* at 97. The jury only needed to believe beyond a reasonable doubt that he was intoxicated under either theory. *Id.* Further, the lack of extrapolation evidence may mean that the blood test evidence carries less weight, but it is still some evidence of intoxication under either method of proving intoxication. *Maxwell v. State*, 253 S.W.3d 309, 316 (Tex. App.—Fort Worth 2008, pet. ref'd)

Indeed, the court of criminal appeals has identified several characteristics — many present in this case—that constitute evidence of intoxication, including slurred speech or mumbled words, bloodshot or glassy eyes, unsteady balance, a "staggering gait," swaying, inability to perform field sobriety tests or follow directions, and the odor of alcohol on the person or on his breath. *See Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010); *Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985). The testimony of a police officer regarding the defendant's behavior and the officer's opinion that the defendant is intoxicated provides sufficient support to uphold a jury verdict. *Zill v. State*, 355 S.W.3d 778, 785–86 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Further, a jury can consider a defendant's refusal to

perform field sobriety tests as evidence of intoxication. *See Maxwell*, 253 S.W.3d at 317–18. Likewise, a refusal to submit a blood or breath sample can be considered as evidence of intoxication. *Zill*, 355 S.W.3d at 786.

Here, there was evidence that (1) witnesses saw appellant's car almost collide with other cars;[2] (2) Sergeant Haver saw appellant's car travel into oncoming traffic; (3) Sergeant Haver noticed that appellant had slurred speech and a strong odor of alcoholic beverage on his breath; (5) Deputy Geraci saw that appellant was unsteady on his feet, had bloodshot, watery eyes, and had a strong odor of alcoholic beverage; (6) appellant refused to perform any field sobriety tests; (7) after being warned of the consequences of refusing to provide a breath or blood specimen, appellant refused to provide such a specimen; (8) Sergeant Haver and Deputy Geraci both expressed their opinions that appellant was intoxicated; (9) appellant's blood test, which was drawn more than 3 and one-half hours after police obtained a warrant, showed a BAC of 0.145; and (10) appellant admitted drinking alcoholic beverages that night.

Nevertheless, appellant contends that the State's evidence is insufficient because he testified that he is a Type 1 diabetic and EMS tested his sugar levels,

---

[2]    In his second point of error, appellant contends that this evidence was inadmissible hearsay. We consider all the evidence admitted at trial—even improperly admitted evidence, including hearsay—when performing a sufficiency review. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Poindexter v. State*, 153 S.W.3d 402, 406–09 (Tex. Crim. App. 2005).

which, at 308, was higher than the normal range of 80 to 120. Appellant argues that, because there was evidence that Type 1 diabetes might cause the same symptoms as alcohol intoxication, "it was incumbent [on the State] to provide the jury with some scientific evidence to choose between these possibilities." We disagree.

The "beyond a reasonable doubt" standard does not require the State to disprove every conceivable alternative to a defendant's guilt. *Ramsey v. State*, 473 S.W.3d 805, 808 (Tex. Crim. App. 2015). The court of criminal appeals rejected a construct requiring the State to do so "to prevent usurpation of the fact finder's exclusive role to resolve inconsistencies in the evidence, including deciding whether the State's theory of the case is more credible than another reasonable, exculpating hypothesis raised by the evidence." *Id.* at 808 n.3.

Here, based on the evidence presented, a reasonable jury could have concluded that appellant was intoxicated, as that term was defined in the charge. Likewise, a reasonable jury could have rejected appellant's theory of the case, i.e., that his intoxication symptoms were caused by diabetes.

Accordingly, we overrule appellant's first point of error.

## HEARSAY

At trial, Sergeant Haver testified, over appellant's hearsay objection, that she pulled appellant over, in part, because other motorists had flagged her down and had reported a car as driving erratically. In his second point of error, appellant contends

10

that the trial court erred by allowing Haver to testify about what other people had told her was error. During trial, the following exchange took place:

[Prosecutor]: And when you were flagged down, what did you learn?

[Defense Counsel]: Well, I'll object to any hearsay, just ask that it be restricted to what she did.

[Prosecutor]: Judge, if I may respond. I'm just asking what she learned from when she was flagged down, not asking what anybody said.

[Trial Court]: All right. As long as you don't go into what another person did.

[Prosecutor]: Sure.

[Prosecutor]: So, when you were flagged down by the citizens, what did you learn?

[Haver]: I learned that there was a vehicle that was traveling down the roadway that had almost struck several other vehicles.

[Prosecutor]: Okay.

[Defense Counsel]: Well, judge, again, I'll object if that's not her personal knowledge. I'll object to that answer.

[Trial Court]: Overruled.

## A. Standard of Review and Applicable Law

Hearsay is a declarant's out-of-court statement that is offered into evidence to prove the truth of the matter asserted. *See* TEX. R. EVID. 801(d). We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court abuses its

discretion when its ruling is arbitrary, unreasonable, or without reference to any guiding rules or principles. *Lyles v. State*, 850 S.W.2d 497, 502 (Tex. Crim. App. 1993). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Martinez*, 327 S.W.3d at 736. A trial court's admission of inadmissible hearsay constitutes non-constitutional error, and it will be considered harmless if we, after examining the record as a whole, are reasonably assured the error did not influence the jury verdict or had but a slight effect. *See* TEX. R. APP. P. 44.2(b); *Garcia v. State*, 126 S.W.3d 921, 927–28 (Tex. Crim. App. 2004). The improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial. *See* TEX. R. APP. P. 44.2(b); *Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991).

## B. Analysis

Hearsay is a statement, other than one made by the declarant while testifying at trial, that is offered to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay is inadmissible except as provided by statute or the rules of evidence. TEX. R. EVID. 802. A statement not offered to prove the truth of the matter asserted is not hearsay. *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995); *Sandoval v. State*, 409 S.W.3d 259, 281 (Tex. App.—Austin 2013, no pet.). "[T]estimony by an officer that he went to a certain place or performed a certain act in response to

12

generalized 'information received' is normally not considered hearsay because the witness should be allowed to give some explanation of his behavior." *Poindexter v. State*, 153 S.W.3d 402, 408 n.21 (Tex. Crim. App. 2005). "But details of the information received are considered hearsay and are inadmissible." *Id.* In determining whether such testimony is permissible, "[t]he appropriate inquiry focuses on whether the 'information received' testimony is a general description of possible criminality or a specific description of the defendant's purported involvement or link to that activity." *Id.* The former is admissible, the latter is not. *See id.* An officer "should not be permitted to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports, on the ground that she was entitled to tell the jury the information upon which she acted." *Schaffer v. State*, 777 S.W.2d 111, 114–15 (Tex. Crim. App. 1989); *Sandoval*, 409 S.W.3d at 282.

In *Lyons v. State*, No. 03–12–00474–CR, 2015 WL 895343, at *9, (Tex. App.—Austin Feb. 26, 2015, pet. ref'd) (mem op., not designated for publication), a police officer testified about what EMS responders had told him when he arrived at the scene. *Id.* Specifically, the officer testified that EMS responders told him that an unresponsive ten-week-old infant was en route to the hospital with swelling to the side of the head and difficulty breathing. *Id.* The court of appeals held that this testimony was permissible as "information received," to explain why the officer was

dispatched to the scene, i.e., to investigate a serious injury to a child. *Id.* Additionally, this information did not describe the appellant's involvement with the crime. *Id.*

In contrast, in *Wright v. State*, No. 12–14–00125–CR, 2015 WL 4116701, at *3 (Tex. App.—Tyler July 8, 2015, no pet.) (mem. op., not designated for publication), an officer testified that he went to a particular hotel room because someone had told him that "the subject [in room 128] had the keys to the car over a possible drug debt that the [declarant] owed [the defendant]." The court of appeals held that the officer's testimony was detail unnecessary to explain the officer's presence at the scene, and it strongly indicated that appellant was a drug dealer.

The testimony complained of in this case is more like the "general description of possible criminality" in *Lyons* than the specific detail offered about the defendant in *Wright*. Havers testified that several motorists flagged her down and from them she learned about a vehicle on the roadway—a white BMW SUV—that had almost struck several other vehicles. The testimony explains why she began looking for such a vehicle, and does not offer any specific details about appellant. As such, the trial court did not abuse its discretion by overruling appellant's hearsay objection and admitting the evidence.

We overrule appellant's second point of error.

**MOTION FOR NEW TRIAL**

14

After the jury began its deliberations, the jury foreman sent out a note that provided as follows:

> One of the jurors indicated that last night he went home and googled information regarding blood alcohol levels and discussed that information with the jury. We feel obligated to inform the court of this fact.

The trial court then polled each juror individually, and each juror indicated that he or she would continue to deliberate and disregard any outside information. In point his third point of error, appellant contends the trial court abused its discretion in overruling his motion for new trial because the jury received other evidence that was detrimental to him during its deliberations.

## A. Standard of Review and Applicable Law

Texas Rule of Appellate Procedure 21.3(f) requires, in relevant part, that a new trial be granted "when, after retiring to deliberate, the jury has received other evidence." A two-prong test must be satisfied for the defendant to obtain a new trial: (1) the evidence must have been received by the jury, and (2) the evidence must be detrimental or adverse to the defendant. *Bustamante v. State*, 106 S.W.3d 738, 743 (Tex. Crim. App. 2003). In determining whether evidence was "received" by the jury, a court may consider how extensively the evidence was examined by the jury and whether the jury was given an instruction to disregard. *Id.* at 743.

We review a trial court's denial of a new-trial motion for an abuse of discretion. *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). We view

15

the evidence in the light most favorable to the trial court's rulings and uphold them if they are within the zone of reasonable disagreement. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007); *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). We do not substitute our judgment for that of the trial court; rather we decide whether the trial court's decisions were arbitrary or unreasonable. *Webb*, 232 S.W.3d at 112; *Biagas v. State*, 177 S.W.3d 161, 170 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). If there are two permissible views of the evidence, the trial court's choice between them cannot be held to be clearly erroneous. *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012). A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Webb*, 232 S.W.3d at 112.

## B. Analysis

In *Bustamante*, after jury deliberations began, the jury sent out a note asking whether it could consider a witness statement that had never been admitted into evidence, but that had accidentally been provided to the jurors in the jury room. 106 S.W.3d at 741. The trial court questioned all twelve jurors individually, and each said that they could completely disregard the statement, which the trial court instructed them to do. *Id.* at 742. The court of appeals recognized that an instruction to disregard during deliberations was comparable in effect to an instruction to disregard inadmissible evidence. *Id.* at 743–44. The court recognized that under the

16

circumstances of that case—the jury recognizing a problem and querying the judge for instructions and the judge examining each juror regarding the matter and instructing the jury to disregard the outside evidence—the evidence "was not 'received' by the jury and any error associated with that statement was cured by the instruction." *Id.* at 744.

Circumstances similar to those in *Bustamante* are present here. The jury, after beginning deliberations, but before reaching a verdict, recognized that there was an issue regarding the blood alcohol information that the juror had "googled," and so informed the trial court. The trial court then brought the jury back in, told them that he had read their note, and asked them whether they could "continue to deliberate and disregard this outside information and reach a verdict only based on the testimony you've heard and the exhibits entered into evidence." Each juror, when questioned individually, responded affirmatively. As in *Bustamante*, the trial court's instruction to disregard the outside information and the jury's indication that it would do so means that, in effect, it was never "received" by the jury. *See Bustamante*, 106 S.W.3d at 744. As such, the trial court did not abuse its discretion by denying appellant's motion for new trial.

Accordingly, we overrule appellant's third point of error.

## CONCLUSION

We affirm the trial court's judgment.

17

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).