# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00697-CR

**James Andrew Flom, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM COUNTY COURT AT LAW NO. 9 OF TRAVIS COUNTY
### NO. C-1-CR-13-211772, HONORABLE JON N. WISSER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After a traffic stop, James Andrew Flom was arrested and ultimately charged with driving while intoxicated with a blood-alcohol level of 0.15 or more. *See* Tex. Penal Code § 49.04(a), (d) (setting out elements of offense and specifying that offense is Class A misdemeanor if defendant has blood-alcohol "level of 0.15 or more"). Prior to trial, Flom filed a motion to suppress the evidence obtained during the traffic stop. After convening a suppression hearing, the county court at law denied the motion to suppress. Following that ruling, a jury trial was held. At the end of the guilt-or-innocence phase, the jury found Flom guilty of the charged offense. At the end of the punishment phase, the jury recommended that Flom be sentenced to 30 days' confinement. *See id.* § 12.21 (setting out permissible punishment range for Class A misdemeanor). The county court at law rendered its judgment of conviction in accordance with the jury's verdicts. In a single

issue on appeal, Flom challenges the county court at law's ruling on his suppression motion. We will affirm the county court at law's judgment of conviction.

## BACKGROUND

As set out above, Flom was arrested for driving while intoxicated after a traffic stop. The traffic stop was initiated by Officer Hector Campos. Following his arrest, Flom filed a motion to suppress evidence obtained during the investigation, and the county court at law held a hearing regarding that motion. During the hearing, the State called Officer Campos to testify as a witness. In addition, prior to making its ruling, the county court at law reviewed an audio and visual recording made from Officer Campos's dashboard camera.

In his testimony, Officer Campos explained that he worked for "the DWI Enforcement Unit," that he observed Flom driving after midnight, that Flom was driving away "from the downtown area" where many bars are located, that Flom's vehicle did not have its headlights on, that he initiated a traffic stop, that Flom drove over a curb when pulling his car over, that Flom started rolling his car windows up as Officer Campos approached the car, and that Flom rolled the window up to where there was only a one-inch opening. Furthermore, Officer Campos testified that based on his initial observations, he suspected that Flom might be intoxicated. Regarding his interaction with Flom, Officer Campos recalled that Flom's "speech was mumbled and slurred at times," that Flom's eyes were bloodshot, and that there was "an odor of alcohol coming from inside the vehicle." In addition, Officer Campos related that in an effort to ascertain whether the smell of alcohol was coming from Flom or Flom's passenger, Officer Campos asked Flom to step out of the car but that Flom refused to get out of the car, to open his car door, and to

2

turn off the car. Moreover, Officer Campos testified that he asked Flom if he had any weapons with him, that Flom aggressively answered that it was none of Officer Campos's business, that Flom cursed at Officer Campos, and that Flom "was getting increasingly agitated." Further, Officer Campos related that he called for backup because Flom was behaving in an aggressive manner.

Regarding events that occurred after other officers arrived on the scene, Officer Campos testified that one of the responding officers placed underneath Flom's car a tire-deflating device designed to keep an individual from driving off, that Flom opened his door to see what had been placed under the car, that Officer Campos and other officers grabbed Flom at that time and placed him in handcuffs "because of his . . . demeanor," and that Flom was "pretty upset." Additionally, Officer Campos explained that he placed Flom under arrest for "driving without headlights at night" and for failing to comply with a lawful order and that he placed Flom in the back of a patrol car. Moreover, Officer Campos recalled that after he placed Flom in the patrol car, he noticed "a strong odor of alcohol coming from" Flom's breath. In addition, Officer Campos testified that he informed Flom of his *Miranda* rights, that he asked Flom to submit to field-sobriety testing and to provide a voluntary breath sample, and that Flom refused to perform any tests and to provide a breath sample. Furthermore, Officer Campos explained that his portable-breath-testing machine can be set in a passive mode to detect the presence of alcohol in confined spaces, that he used his portable device in this manner while Flom was in the patrol car, and that the device displayed a positive result for the presence of alcohol.

During his testimony, Officer Campos related that based on all of his observations, he concluded that Flom was intoxicated. Next, Officer Campos recalled that he placed Flom under

3

arrest for driving while intoxicated, that he read the driving-while-intoxicated-statutory warnings to Flom, that he asked Flom to provide either a breath or a blood sample, that Flom refused, that Officer Campos applied for a search warrant, that a magistrate granted the search warrant, and that a blood sample was taken from Flom. Regarding the results of the blood test, Officer Campos testified that the results showed that Flom's blood-alcohol level was "well above the legal limit."

In his cross-examination, Office Campos recalled that at least ten to fifteen minutes passed between the time that the traffic stop was initiated and the time when Flom got out of the car, but Officer Campos also emphasized that the delay was caused by Flom's refusal to get out of the car. In addition, Officer Campos related that he did not issue a citation to Flom for driving without headlights until after Flom had been taken to jail because he does not prepare traffic tickets while suspecting that a driver is intoxicated. In other words, Officer Campos testified that he would not have issued a citation to Flom for driving without headlights and released Flom while believing that Flom was intoxicated because Officer Campos had a duty to ensure that Flom could safely drive before releasing him. However, Officer Campos clarified that he will issue a citation to a driver and release the driver if he has no reason to suspect that the driver is intoxicated. In addition, Officer Campos explained that he would likely not have arrested Flom for failing to drive without headlights if Flom had complied with the directive to get out of the car.

As set out above, the county court at law also reviewed a recording from Officer Campos's dashboard camera before making its ruling. The recording is generally consistent with Officer Campos's testimony. Specifically, the video shows that Flom refused to answer Officer Campos's questions and refused Officer Campos's requests that Flom roll down his window, turn off his car, and step out of the car. Further, the recording shows that Officer Campos made several

4

attempts to engage with Flom before the other officers arrived but that Flom did not cooperate and, at one point, rolled his window up entirely even though Officer Campos communicated that he was trying to evaluate whether Flom could safely drive the car. Furthermore, the recording documented how in response to Officer Campos's question about whether there were any weapons in the car, Flom replied, "none of your fucking business." In addition, the recording chronicles that Flom was removed from the vehicle approximately fourteen minutes after Officer Campos initiated the traffic stop by activating his emergency lights, that approximately four minutes later Flom was informed that he was being detained for failing to comply with a lawful order, that Flom was read his *Miranda* rights and the statutory warnings for driving-while-intoxicated investigations, and that Flom refused to provide a breath sample.

Ultimately, the county court at law denied Flom's motion to suppress and issued the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

1. On July 6, 2013, Austin police officer Hector Campos was on duty in Austin, Texas. At approximately 12:51 [a.m.], the officer was patrolling the 3400 block of South Congress Avenue.

2. At approximately 12:51 [a.m.] on July 6, 2013, Officer Hector Campos observed a Honda traveling south on the same block range in the inside lane. The defendant, Mr. Flom, was operating the motor vehicle without headlights when required.

3. The Officer initiated a traffic stop[,] and the defendant struck a curb when pulling over.

4. The Officer approached the defendant's vehicle[,] and the defendant began to roll up his window. The defendant would not roll down the window.

5. The defendant kept refusing to roll down his window. The defendant's speech was slurred and mumbled[,] and there was an odor of alcohol coming from the vehicle. A verbal exchange continued with the defendant who would not roll down his window.

6. Backup Officer, Corporal Herring, arrived and placed stop sticks in front of the defendant's vehicle. The defendant was asked to step out of the vehicle. The defendant was removed by the Officers and placed under arrest for Failure to Comply with Lawful Order-Class C Misdemeanor.

7. The defendant was read Miranda warnings. Officer Campos could smell an odor of alcohol. The defendant terminated the interview[,] and no SFST's were conducted. The Officer used the PBT de[v]ice to register a passive test[,] which was positive for the detection of alcohol in the backseat of his patrol unit where the defendant was seated.

8. Officer Campos read the defendant the DIC 24 in English and asked the defendant to provide a sample of breath[,] and the defendant refused. Officer Campos asked for a sample of blood[,] and the defendant refused.

9. Officer Campos applied for a search warrant for a sample of the defendant's blood. The warrant was executed[,] and the blood sample was drawn.


## CONCLUSIONS OF LAW

1. The Court finds that there was reasonable suspicion for the detention of the defendant in order for a DWI investigation to be conducted. By failing to display headlights when required[,] the Defendant violated Texas Transportation Code, Section 547.302[.]

2. Officer Campos read the defendant Miranda rights for a separate offense. Officer Campos developed probable cause to arrest the defendant for Driving While Intoxicated based on the totality of the circumstances.

3. The Court hereby denies the defense counsel's motion to suppress.


After the county court at law ruled on the suppression motion, a jury trial was held, and the jury found Flom guilty of the charged offense. Flom appeals the ruling on his suppression motion.

## STANDARD OF REVIEW AND GOVERNING LAW

Appellate courts review a trial court's ruling on a motion to suppress for an abuse of discretion. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013). Under that standard, the record is "viewed in the light most favorable to the trial court's determination, and the judgment will be reversed only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). In general, appellate courts apply "a bifurcated standard, giving almost total deference to the historical facts found by the trial court and analyzing *de novo* the trial court's application of the law." *See State v. Cuong Phu Le*, 463 S.W.3d 872, 876 (Tex. Crim. App. 2015); *see also Arguellez*, 409 S.W.3d at 662 (explaining that appellate courts afford "almost complete deference . . . to [a trial court's] determination of historical facts, especially if those are based on an assessment of credibility and demeanor"). "The same deference is afforded the trial court with respect to its rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor." *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). Moreover, courts "consider only the evidence adduced at the suppression hearing because the ruling was based on that evidence rather than evidence introduced later" unless "the suppression issue has been consensually relitigated by the parties during trial." *Herrera v. State*, 80 S.W.3d 283, 290-91 (Tex. App.—Texarkana 2002, pet. ref'd) (op. on reh'g). In addition, a trial court's ruling on the motion will be upheld if it is correct under any theory of law applicable to the case regardless of whether the trial court based its ruling on that theory, but "a trial court's ruling will not be reversed based on a legal theory that the complaining party did not present to it." *Story*, 445 S.W.3d at 732.

"Routine traffic stops are analogous to investigative detentions." *Martinez v. State*, 236 S.W.3d 361, 369 (Tex. App.—Fort Worth 2007, pet. ref'd, untimely filed); *see also State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011) (describing types of interactions between citizens and law-enforcement personnel). Investigative detentions are less intrusive than arrests, *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011), and an officer may initiate a traffic stop if he has reasonable suspicion that a crime is about to be committed or has been committed, *see Guerra v. State*, 432 S.W.3d 905, 911 (Tex. Crim. App. 2014). In order for reasonable suspicion to exist, an actual violation does not need to have occurred; rather, it is only necessary that "the officer reasonably believed a violation was in progress." *Green v. State*, 93 S.W.3d 541, 545 (Tex. App.—Texarkana 2002, pet. ref'd); *see Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000) (noting that officer may briefly detain person for investigative purposes on less than probable cause where specific and articulable facts along with inferences from those facts reasonably warrant detention). "In assessing whether the intrusion was reasonable, an objective standard is utilized: would the facts available to the officer at the moment of the seizure or search warrant a man of reasonable caution in the belief that the action taken was appropriate." *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997); *see also Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001) (explaining that "[t]his standard is an objective one: there need only be an objective basis for the stop; the subjective intent of the officer conducting the stop is irrelevant"). Moreover, the assessment is made in light of the totality of the circumstances. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). Provided that the traffic stop is based on reasonable suspicion, then the detention "does not violate Texas law." *Guerra*, 432 S.W.3d at 911.

8

In addressing whether a stop was supported by reasonable suspicion, reviewing courts must consider whether the officer's actions were justified at the inception and whether the circumstances justifying the stop are reasonably related to the seizure's scope. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). "[T]he general rule is that an investigative stop can last no longer than necessary to effect the purpose of the stop." *Id.* For example, "if a driver is stopped on suspicion of driving while intoxicated, once the police officer determines that the driver is not impaired, he should be promptly released." *Id.* However, "[i]f during a valid traffic stop and detention, the officer develops reasonable suspicion that the detainee is engaged in criminal activity, prolonged or continued detention is justified." *Haas v. State*, 172 S.W.3d 42, 52 (Tex. App.—Waco 2005, pet. ref'd); *see Powell v. State*, 5 S.W.3d 369, 377 (Tex. App.—Texarkana 1999, pet. ref'd); *see also Woodard*, 341 S.W.3d at 414 (explaining that information known to officer gave him probable cause to arrest defendant for driving while intoxicated or reasonable suspicion to detain and administer field-sobriety tests).

**DISCUSSION**

In his sole issue on appeal, Flom contends that the county court at law "erred in denying [his] [m]otion to [s]uppress due to an unlawful detention where the evidence showed [that Officer Campos] did not act diligently in conducting his DWI investigation" and that he was impermissibly "detained for approximately 18 minutes after he was stopped for driving without headlights." Regarding his detention, Flom contends that "the detention lasted from the time it was initiated" by Officer Campos to the "time Flom was put under arrest . . . for failure to obey a lawful order." In addition, Flom argues that other than taking Flom's driver's license, Officer Campos

9

"did not begin a record check or anything else" until after Flom was removed from the vehicle approximately fourteen minutes after the traffic stop was initiated. Moreover, Flom contends that Officer "Campos did not make any effort at all to begin the traffic related investigation other than telling Flom what he was pulled over for" and that the only questions that Officer Campos asked "that could relate to the DWI investigation" were the following: why did Flom smell like alcohol, and where was Flom coming from. Additionally, Flom argues that even though Officer Campos could talk with Flom through the partially-open-car window, Officer Campos "did not utilize the opportunity to push the investigation forward even where he had 2-3 other officer[]s there to assist." Moreover, Flom asserts that Officer Campos could have arrested Flom for driving without headlights much earlier than when Flom was actually placed under arrest and could have continued the investigation and urges "that no further evidence of intoxication was obtained once Flom exited the vehicle that could not have been obtained by [an] earlier arrest." Based on the preceding, Flom insists that he "was detained for 18 minutes before [his] arrest" and that "given the lack of diligence by [Officer] Campos[,] this amount of time is entirely unreasonable."

As an initial matter, we note that it appears that Flom has not preserved these claims for appellate consideration. In his motion to suppress, Flom generally suggested that the actions by law-enforcement personnel violated various constitutional and statutory provisions and that Flom was unlawfully arrested, but Flom did not assert the arguments presented in his appellant's brief. Similarly, Flom did not urge his appellate arguments during the suppression hearing. Instead, Flom argued that the county court at law should grant his suppression motion because Officer Campos could have chosen to promptly issue a traffic citation and release Flom but instead "cleverly [chose

10

to] not write the ticket for the traffic infraction so that the[ police] could continue to detain" Flom. In other words, Flom contended that "not giving [Flom] the ticket was a maneuver used to prevent him from being free to go, to continue his detention, so that he would have to cooperate with a DWI investigation." In addition, Flom urged that the suppression motion should be granted because he was essentially arrested for deciding to "not cooperate with the DWI investigation." Further, Flom argued that Officer Campos improperly made up his mind about whether Flom was intoxicated at the start of the traffic stop and that the officers performed "a pre-textual arrest" for the traffic citation and failure to comply with an order for the purpose of improperly investigating whether he committed the offense of driving while intoxicated. Finally, Flom asserted that he should not have been investigated based on his behavior towards the police on the night in question because, according to Flom, "he's got a First Amendment right to be" rude to police officers.

In light of the disparity between the arguments presented below and the ones presented on appeal, we must conclude that Flom did not preserve for appellate consideration the complaints set out in his brief. *See* Tex. R. App. P. 33.1(a) (stating that to preserve error for appeal, record must show that complaint was made to trial court and that trial court ruled on request or refused to rule and that "complaining party objected to the refusal"); *Rothstein v. State*, 267 S.W.3d 366, 373-74 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (determining that defendant did not preserve issue for appeal where his argument did not comport with objection raised in motion to suppress or at suppression hearing); *see also Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005) (determining that defendant's "global statements in his pretrial motion to suppress" asserting that police violated various constitutional provisions "were not sufficiently specific to preserve the arguments he now makes on appeal").

11

Even assuming for the sake of argument that Flom's appellate complaints had been properly preserved, we would still be unable to sustain his issue on appeal. Although the county court at law did not have an opportunity to make findings of fact and conclusions of law regarding the arguments that Flom presents on appeal, the county court at law did find that Officer Campos observed Flom driving without his headlights after midnight. Accordingly, we agree with the county court at law that Officer Campos had reasonable suspicion to believe that Flom violated the Transportation Code by driving without turning his headlights on. *See* Tex. Transp. Code § 547.302(a) (requiring drivers to "display each lighted lamp . . . at nighttime"); *see also Francis v. State*, 425 S.W.3d 554, 556, 557 (Tex. App.—Fort Worth 2014, no pet.) (explaining that "chapter 547 of the transportation code makes clear that headlights are required at night" and concluding that "[d]riving without headlights at night is a traffic offense"). Having observed a traffic violation, Officer Campos also had reasonable suspicion to initiate the traffic stop. *See Bullock v. State*, 426 S.W.3d 226, 229 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (stating that "[a] law enforcement officer may lawfully stop and detain a motorist who commits a traffic violation"); *Vasquez v. State*, 324 S.W.3d 912, 919 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (explaining that officer may initiate traffic stop if he has reasonable basis to believe that individual has committed traffic offense); *Bracken v. State*, 282 S.W.3d 94, 98 (Tex. App.—Fort Worth 2009, pet. ref'd) (explaining that violation of provision of Transportation Code creates reasonable suspicion justifying stop).

Further, we note that the county court at law found that Flom struck a curb when pulling his car over, that Flom rolled his window up as Officer Campos approached the vehicle, and that Officer Campos determined that Flom's speech was slurred and that there was an odor of

12

alcohol emanating from inside Flom's vehicle. In addition, Officer Campos also testified that Flom's eyes were bloodshot, that Flom was acting aggressively, and that Flom was driving away from the downtown bar district after midnight. In light of the preceding, we agree with the county court at law's conclusion that Officer Campos had reasonable suspicion to further detain Flom for the purpose of performing a driving-while-intoxicated investigation. *See Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010) (explaining that evidence that would logically raise inference that individual is intoxicated includes, among other things, "erratic driving," "slurring or mumbling words," and "bloodshot eyes"); *Texas Dep't of Pub. Safety v. Gilfeather*, 293 S.W.3d 875, 880 (Tex. App.—Fort Worth 2009, no pet.) (noting that "[b]loodshot eyes, an odor of alcohol on a person's breath, and unsteady balance are all classic symptoms of intoxication"); *Maxwell v. State*, 253 S.W.3d 309, 314 (Tex. App.—Fort Worth 2008, pet. ref'd) (determining that probable cause was present when, among other things, defendant was speeding at 2:00 a.m.); *see also* Tex. Penal Code § 49.01(2)(A) (defining term intoxicated as meaning "not having the normal use of mental or physical faculties by reason of the introduction of alcohol . . . into the body"); *Rubeck v. State*, 61 S.W.3d 741, 745 (Tex. App.—Fort Worth 2001, no pet.) (explaining that "[o]nce a police officer makes a bona fide stop for a traffic offense, he may also investigate any other offense that he reasonably suspects has been committed").

Additionally, although the county court at law made no express determination regarding the length of the detention or regarding the diligence of the investigative efforts undertaken by Officer Campos, the recording from Officer Campos's dashboard camera is consistent with Flom's assessment of an eighteen-minute detention and with the estimate provided by Officer

13

Campos during his testimony. The recording chronicles that there was a fourteen-minute gap between when the traffic stop was initiated and when Flom was removed from the vehicle in order to allow Officer Campos to continue his investigation for driving while intoxicated, and the recording further documents that there was an additional four-minute delay before Flom was informed that he was being detained for failing to comply with a lawful order. In addition, the recording documents that Flom was read his *Miranda* rights and provided with statutory warnings approximately seven minutes later.

Moreover, the county court at law did find that Flom repeatedly refused to roll down his window, and Officer Campos testified that the delay in investigation was caused by Flom's lack of cooperation when he refused to lower his window, get out of the car, and turn off his car. Further, Officer Campos related that Flom responded in an aggressive manner when asked whether there were weapons in the car and that there was a passenger in the car with Flom. In addition, Officer Campos testified that under those circumstances, he felt it was best to wait for backup before proceeding out of concern for his safety due to Flom's aggressive behavior. Regarding Flom's assertion that the delay could not have been justified by a need to collect additional evidence because, according to Flom, no additional evidence regarding his alleged intoxication was obtained after he got out of the car, we note that Officer Campos testified regarding additional evidence obtained while Flom was in the patrol car through the use of a portable breathalyzer on a passive setting and that Officer Campos explained that although he attempted to continue his investigation, Flom expressly refused to submit to any field-sobriety testing and refused to provide a breath and a blood sample to test his blood-alcohol level.

14

Regarding the length of the detention, we note as an initial matter that several appellate courts have determined that temporary detentions of a similar or even a significantly longer duration were reasonable under the circumstances. *See Belcher v. State*, 244 S.W.3d 531, 540-42 (Tex. App.—Fort Worth 2007, no pet.) (concluding that detaining individual for additional twenty-seven minutes after already detaining him for twelve minutes so that another police officer could perform investigation regarding whether defendant was driving while intoxicated was not unreasonable under circumstances); *Hartman v. State*, 144 S.W.3d 568, 570, 573-74 (Tex. App.—Austin 2004, no pet.) (determining that five-to-fifteen-minute delay in investigation primarily so that another officer could bring video camera to scene for investigative purposes was reasonable because delay furthered legitimate law-enforcement purposes); *Josey v. State*, 981 S.W.2d 831, 844-45 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (holding that 90-minute detention was reasonable); *see also Haas*, 172 S.W.3d at 51-52 (noting that there is no preset-time limit on traffic stops and that stop may last as long as reasonably necessary).

More importantly, the testimony presented during the hearing and the dashboard-camera recording demonstrate that the delay at issue in this case was caused by Flom's failure to cooperate with the investigation or answer Officer Campos's questions. *See Balentine v. State*, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002) (determining that length of detention was reasonable and observing that "the amount of time necessary to question appellant about his possible involvement in the shots fired call increased substantially because of *appellant's* evasive answers, and not because of some dilatory tactic" by police); *Herman v. State*, No. 01-10-00344-CR, 2011 WL 1900572, at *6 (Tex. App.—Houston [1st Dist.] May 12, 2011, no pet.) (mem. op., not designated

15

for publication) (rejecting argument that 30- to 45-minute detention was too long and noting that length of detention increased because defendant provided "fake name" and provided "evasive answers"). Rather than comply with Officer Campos's requests that would have allowed Officer Campos to determine whether the smell of alcohol was coming from Flom or his passenger and whether Flom could safely drive, Flom refused to turn off his car, to open his car door, and to get out of the vehicle. In fact, after Flom had rolled his window up to allow only a one-inch gap for Officer Campos to communicate through, Flom then elected at one point to role his window up entirely as part of his efforts to not cooperate with Officer Campos's investigation. Moreover, given that the traffic stop was occurring late at night, that Officer Campos was initially outnumbered by Flom and his passenger, and that Flom had expressed frustration regarding the propriety of the traffic stop, Officer Campos attempted to ascertain whether the investigation could safely continue by asking whether Flom had any weapons in the car, but Flom responded in an aggressive tone by stating that it was none of Officer Campos's business whether there were weapons in the car. *See Michigan v. Long*, 463 U.S. 1032, 1047 (1983) (observing "that investigative detentions involving suspects in vehicles are especially fraught with danger to police officers").

Even though Officer Campos arguably could have forced the issue and taken steps to remove Flom from the car, Officer Campos and the other responding officers patiently waited for Flom to open his car door before acting in an effort to avoid risking the safety of the responding officers and the individuals in the car and to avoid a potentially dangerous confrontation with an individual who had displayed an aggressive attitude toward the police. Under the circumstances present here, we can see no reason to conclude that this type of reasoned and tempered response

16

to Flom's behavior should serve as a basis for determining that Flom was detained for an unconstitutionally long period of time.

In light of the district court's determination that there was reasonable suspicion to detain Flom for an investigation to ascertain whether he was driving while intoxicated, of the relatively short length of the detention, and of the portions of Officer Campos's testimony and of the recording from his dashboard camera indicating that the delay was caused by Flom's actions, we would be unable to conclude that the district court erred by failing to grant the motion to suppress had the district court determined that the delay was reasonable under the circumstances. For all these reasons, we overrule Flom's sole issue on appeal.

## CONCLUSION

Having overruled Flom's sole issue on appeal, we affirm the county court at law's judgment of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Bourland

Affirmed

Filed: August 22, 2018

Do Not Publish